NO. 14-15670

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

KATIE KANE, *et al.*,

*Plaintiffs-Appellants*

V.

CHOBANI, INC.,

*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALFORNIA,
SAN JOSE DIVISION

## REPLY BRIEF OF APPELLANTS KATIE KANE, DARLA BOOTH, AND ARIANNA ROSALES

Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda
Suite 425
San Jose, CA 95126
Main: (408) 369-0800
Direct: (408) 429-6506

Darren L. Brown
PROVOST & UMPHREY LAW FIRM, L.L.P.
490 Park Street
Beaumont, TX 77701
(409) 835-6000
(409) 838-8888 (Fax)

Counsel for Plaintiffs/Appellants
Katie Kane, Darla Booth, and Arianna Rosales

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................... i

TABLE OF AUTHORITIES ...................................................... ii

REPLY ARGUMENT ............................................................ 1

I.   INTRODUCTION ......................................................... 1

II.  ECJ CLAIMS ........................................................... 3

   A.   The district court employed improper legal standards. ................. 3

     1.   Plaintiffs' factual allegations of reliance must be taken as
     true and construed in the light most favorable to Plaintiffs. ................. 3

     2.   Rule 9(b) provides no basis for holding Plaintiffs' allegation
     of reliance insufficient. .......................................... 5

     3.   The standard is "actual reliance," not "reasonable reliance"
     or "justifiable reliance." ......................................... 7

   B.   Chobani's complaints about the FDA's guidance documents
   are neither correct nor relevant to this appeal. ..................... 10

III. "UNLAWFUL SALE" CLAIMS ............................................. 11

IV.  NATURAL CLAIMS ...................................................... 18

V.   UNJUST ENRICHMENT ................................................... 21

CONCLUSION AND PRAYER .................................................... 26

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ................................ 27

CERTIFICATE OF SERVICE ................................................... 28

# TABLE OF AUTHORITIES

## Cases

*AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   No. 13-13046-DJC, 2014 U.S. Dist. LEXIS 129259 (D. Mass. Sept.
   12, 2014)..................................................................................................7

*American Master Lease LLC v. Idanta Partners, Ltd.*,
   225 Cal. App. 4th 1451 (2014) ...............................................................24

*Appalachian Power Co. v. EPA*,
   208 F.3d 1015 (2000)...............................................................................11

*Auer v. Robbins*,
   519 U.S. 452 (1997)..................................................................................11

*Bassiri v. Xerox Corp.*,
   463 F.3d 927 (9th Cir. 2006)....................................................................11

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014)........................................................ 21, 25

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001)..................................................................20

*Brazil v. Dole Packaged Foods, LLC*,
   No.: 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 169948 (N.D. Cal.
   Dec. 8, 2014)............................................................................................25

*Buckland v. Threshold Enterprises, Ltd.*,
   155 Cal. App. 4th 798 (2007). .................................................................17

*Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.)*,
   130 F.3d 309 (8th Cir. 1997).....................................................................6

*Clayworth v. Pfizer, Inc.*,
   49 Cal. 4th 758, 788 (2010). ......................................................... 8, 14, 15

*Conroy v. Regents of Univ. of Calif.*,
   45 Cal. 4th 1244 (2009). ............................................................................7

*County of San Bernardino v. Walsh*,
   158 Cal. App. 4th 533 (2007). .................................................................22

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004)..................................................................19

*Empress LLC v. City & County of San Francisco*,
   419 F.3d 1052 (9th Cir. 2005)..................................................................3

*Evans v. Pearson Enters., Inc.*,
   434 F.3d 839, 852-53 (6th Cir. 2006). ..............................................5, 6

*Henderson v. Gruma Corp.*,
   No. CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077
   (C.D. Cal. Apr. 11, 2011).....................................................................22

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013)............................................. 8, 9, 15, 16

*In re Glenfed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) (en banc), ...............................................6

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009). ...................................................................9, 13

*Johnson v. City of Shelby*,
   135 S. Ct. 346 (2014). ............................................................................4

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011). ...................................................... 9, 13, 15, 17

*Learning Works, Inc. v. Learning Annex, Inc.*,
   830 F.2d 541 (4th Cir. 1987).................................................................6

*Lozano v. AT&T Wireless Servs.*,
   504 F.3d 718 (9th Cir. 2007)..................................................................8

*Medrazo v. Honda of N. Hollywood*,
   205 Cal. App. 4th 1 (2012). ................................................................13

*Meister v. Mensinger*,
   230 Cal. App. 4th 381 (2014). ....................................... 21, 22, 23, 25

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*,
   157 Cal. App. 4th 835 (2007). ...............................................................8

Ohno v. Yasuma,
   723 F.3d 984 (9th Cir. 2013)................................................................21

*Owens v. Haslett*,
   98 Cal. App. 2d 829 (1950)..................................................................12

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
   514 F.3d 856 (9th Cir. 2007)..................................................................5

*Payton v. Wells Fargo Bank, N.A.*,
No. 12-11540-DJC, 2013 U.S. Dist. LEXIS 27692 (D. Mass. Feb. 28, 2013)........................................................................................7

*Public Lands for the People, Inc. v. United States Dep't of Agric.*,
697 F.3d 1192 (9th Cir. 2012)........................................................ 10, 11

*Rev Op Group v. ML Manager LLC (In re Mortgs. Ltd.)*,
771 F.3d 623 (9th Cir. 2014)...........................................................4, 5

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001)................................................................6

*Sec. Litig. v. BP P.L.C. (In re BP P.L.C.),* MDL No. 10-md-2185, Civ.
Act. No. 4:12-cv-2362 (cons.), 2013 U.S. Dist. LEXIS 171459 (S.D. Tex. Dec. 2, 2013)................................................................................6

*Steroid Hormone Product Cases*,
181 Cal. App. 4th 145 (2010), .........................................................13

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)................................................................6

*U.S. v. Gonzalez-Alvarez*,
277 F.3d 73 (1st Cir. 2002). ..............................................................23

*United States v. Ihenacho*,
716 F.3d 266, 277-79 (1st Cir. 2013)................................................14

*Uzyel v. Kadisha*,
188 Cal. App. 4th 866 (2010). ..........................................................24

*Vanscoter v. Sullivan*,
920 F.2d 1441 (9th Cir. 1990)...........................................................11

*Waldrup v. Countrywide Fin. Corp.*,
No. 2:13-cv-08833-CAS(CWx), 2014 U.S. Dist. LEXIS 52216
(C.D. Cal. Apr. 14, 2014)...................................................................24

**Statutes**

CAL. BUS. & PROF. CODE § 17204. ........................................................8

CAL. BUS. & PROF. CODE § 17500. ......................................................13

CAL. BUS. & PROF. CODE § 17533.7. ...................................................13

CAL. BUS. & PROF. CODE § 17535. ........................................................8

CAL. CIV. CODE § 1770(a)(4) ...............................................................13

CAL. HEALTH & SAF. CODE § 110660.......................................................19

CAL. HEALTH & SAF. CODE § 110760.................................................. 12, 19

CAL. HEALTH & SAF. CODE § 110770.......................................................12

CAL. HEALTH & SAF. CODE § 111825.......................................................12

**Rules**

FED. R. CIV. P. 11.....................................................................................5

FED. R. CIV. P. 12(f)................................................................................5

FED. R. CIV. P. 8(a)................................................................................20

FED. R. CIV. P. 9(b). ................................................. 5, 6, 7, 19, 20, 24

**Regulations**

1 C.F.R. § 101.22(a)(4)...........................................................................18

21 C.F.R. § 70.3.....................................................................................18

21 C.F.R. § 101.22..................................................................................18

21 C.F.R. § 70.3(f)..................................................................................18

**Other Authorities**

*Food Labeling: Nutrient Content Claims, General Principles,*
   *Petitions, Definition of Terms; Definitions of Nutrient Content*
   *Claims for the Fat, Fatty Acid, and Cholesterol Content of Food*, 58
   FED. REG. 2302, 2407 (January 6, 1993). ...........................................19

RESTATEMENT OF THE LAW OF CONTRACTS § 599. ..................................12

# REPLY ARGUMENT

## I. INTRODUCTION

In this case, the district court chose to disbelieve Plaintiffs' allegation that they did not recognize "evaporated cane juice" ("ECJ") as added sugar, and required Plaintiffs to plead exactly what they thought ECJ was, if not added sugar. The district court simply refused to accept the fact (as alleged in the complaint) that Plaintiffs simply did not know what it was.[1] *See* ER37-38. This seemed to leave Plaintiffs with three possible options: (1) Stand on their pleadings and hope that the order would be regarded as an appealable order despite the express grant of leave to amend; (2) make something up; or (3) plead additional facts in an attempt to persuade the district court that the allegations of reliance were plausible. Since the first option was imprudent and the second illegal and unethical, Plaintiffs went with the third, which is why the Third Amended Complaint ("TAC") is 36 pages longer than the Second Amended Complaint ("SAC"). *See* ER156-232, 437-477. A good bit of the additional material was aimed at showing that governmental and public health authorities recommend that consumers like the Plaintiffs avoid added sugar, advise consumers to look at the ingredient list to determine whether the product contains added sugar, and list various ways that sugar is listed on food

---

[1] Plaintiffs alleged that when they read the ingredient list, they "did not realize that there was added sugar in the Defendant's yogurt because they did not recognize the term ECJ as being sugar." ER196. They further alleged that while they did not know what ECJ was, it "sounded like something healthy." ER217-219

labels, which lists almost invariably omit ECJ. [2] *See* ER184-201. Plaintiffs did not allege that they were familiar with any of these documents at the time that they made their purchasing decisions, or that the materials were generally known to consumers. Rather, they were mentioned in the TAC because they tend to show that ECJ is not a generally recognized term for added sugar even among governmental and public health authorities advising consumers how to avoid added sugar. Nevertheless, in its response, Chobani talks as though Plaintiffs alleged that they knew everything that is stated in the TAC at the time they made the purchasing decisions.[3] When Chobani says Plaintiffs "understand" this or "recognize" that, it more likely than not refers to something Plaintiffs' lawyers learned in preparing the case, and not something that Plaintiffs had in their minds at the time they made their purchasing decisions.

---

[2] An exception is the HHS and USDA 2010 Dietary Guidelines which mention "cane juice" as a term not recognized by the FDA that is sometimes used on ingredient lists. ER187. Plaintiffs did not allege that they were familiar with the 2010 Dietary Guidelines at the time they made their purchasing decisions.

[3] In a similar vein, Plaintiffs said in their TAC that they "were health conscious consumers who wished to avoid 'added sugars' in the yogurt products they purchased" and that they "care about the nutritional content of food and seek[] to maintain a healthy diet." ER183-184, 215-218 (¶¶85, 179, 187, 189, 191). That simply makes them the target demographic of Chobani's marketing strategy targeting health conscious consumers. *See* ER165-168 (¶¶18-25). But to hear Chobani describe it, one would think that they claimed to be some sort of food science or nutrition experts.

The same goes for references to the TAC to "dried cane syrup," which the FDA has suggested as a possibly legally-permissibly way to designate that ingredient that Chobani mislabels as ECJ. While Plaintiffs might not have been mislead if the ingredient had been listed as a syrup, they never alleged that they were familiar with "dried cane syrup" as a food ingredient or that they were looking for anything other than the words "sugar" or "syrup" when they were scanning the labels for added sugar.

While Chobani may claim that it is just not plausible that in scanning the label for sugar or syrup the Plaintiffs could fail to alert to the word "cane" and recognize it as added sugar, that is a jury argument, not a legal one, and the district court, in ruling on a motion to dismiss, is not permitted to simply disbelieve facts alleged by the Plaintiffs about their own state of mind at the time they made their purchasing decisions.

## II.    ECJ CLAIMS

### A.    The district court employed improper legal standards.

#### 1.    Plaintiffs' factual allegations of reliance must be taken as true and construed in the light most favorable to Plaintiffs.

In their principal brief, Plaintiffs cited this Court's decision in *Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1055-56 (9th Cir. 2005), for the proposition that district courts are not allowed to impose pleading requirements beyond what the rules require. The Supreme Court recently reinforced the

correctness of this proposition in *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) (holding that courts could not require a plaintiff to expressly invoke § 1983 to state a claim where no rule required it). But the district court's error in this regard was not limited to the imposition of an improper pleading requirement. The court also made an impermissible credibility determination when it chose to disregard as "implausible," the facts Plaintiffs alleged regarding their actual reliance. In this issue, there is recent controlling Ninth Circuit authority that is directly on point. *See Rev Op Group v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 623 (9th Cir. 2014).

Plaintiffs argued at length that the district court improperly disregarded as "implausible" the Plaintiffs' factual allegation that they would not have purchased Chobani's products had they known that ECJ was really a form of added sugar. This Court recently addressed this issue in *Rev Op*. In that case, the Court explained:

> "Under the federal pleading rules…, a court cannot disregard statements in a pleading unless the court specifically determines that the statement was made in bad faith under Federal Rule of Civil Procedure 11, or should be struck under Rule 12(f). … A court can only disregard statements in a pleading under Rule 11 if the court "invoke[s] the rule's procedural safeguards" and "employ[s] the rule's substantive standard . . . that [the party or its counsel] acted in bad faith." … A court can only strike a statement in a pleading under Rule 12(f) if the statement is "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous."

*Id*. at 630 (citations omitted). The Court further stated:

4

> In sum, courts cannot examine statements in an answer or other pleading and decide, on the basis of their own intuition that the statements are implausible or a sham and thus can be disregarded. Factual allegations in a pleading, as opposed to legal conclusions, must be presumed to be true.

*Id*. at 632. Absent specific findings that the allegations are a sham under Rule 11 or liable to be stricken under Rule FED. R. CIV. P. 12(f), "'factual allegations in the complaint (or answer) must be tested through normal mechanisms for adjudicating the merits.'" *Id*. (quoting *PAE Gov't Servs., Inc. v. MPRI, Inc*., 514 F.3d 856, 859 n.3 (9th Cir. 2007)). In this case, the district court had no basis to find that Plaintiffs' allegations were a sham under Rule 11 or liable to be stricken under Rule 12(f), and made no such findings. Consequently, the district court's decision to disregard Plaintiffs' factual allegations regarding actual reliance as "implausible" is clear and reversible error under *Rev Op Group*, and regardless of any other arguments made in the briefs, that alone is sufficient grounds to reverse the district court's judgment on Plaintiffs' ECJ and natural claims.

## 2. Rule 9(b) provides no basis for holding Plaintiffs' allegation of reliance insufficient.

Chobani asserts that some other circuits have said that allegations regarding reliance are subject to Rule 9(b), but cites no authority suggesting that the allegation in the TAC would be insufficient. For instance, in *Evans v. Pearson Enters., Inc*., 434 F.3d 839, 852-53 (6th Cir. 2006), the court held that plaintiff had to plead how she detrimentally relied on then alleged fraud but failed to do so. In

*Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.)*, 130 F.3d 309, 322 (8th Cir. 1997), the plaintiff did not allege that she actually read the prospectus or specify which allegedly fraudulent statements she relied upon. In *Learning Works, Inc. v. Learning Annex, Inc*., 830 F.2d 541, 546 (4th Cir. 1987), the court said that the plaintiff failed to allege facts from which it could be inferred that her reliance was reasonable, but her the issue is actual reliance, not reasonable reliance. To the extent Rule 9(b) applies to the "actual reliance" element, it merely requires that the plaintiff "to specify 'with particularity' what actions it took *or forewent* in reliance upon Defendants' alleged misrepresentations." *See Sec. Litig. v. BP P.L.C. (In re BP P.L.C.),* MDL No. 10-md-2185, Civ. Act. No. 4:12-cv-2362 (cons.), 2013 U.S. Dist. LEXIS 171459 at *116-117 (S.D. Tex. Dec. 2, 2013) (citing *Evans*).

And regardless of what other courts may have said, under this Court's precedent, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). The plaintiff must set forth "what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig*., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Recent decisions construing similar precedent from the First Circuit had no trouble determining that

reliance is not among the circumstances of the fraud that must be pleaded with particularity. *See Payton v. Wells Fargo Bank, N.A*., No. 12-11540-DJC, 2013 U.S. Dist. LEXIS 27692 at *16 (D. Mass. Feb. 28, 2013) (observing that Rule 9(b)'s heightened pleading standard is satisfied by an averment of the who, what, where, and when of the allegedly false or fraudulent representation, so the "complaint cannot run afoul of Rule 9(b) for failing to plead reliance with particularity"); *AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc*., No. 13-13046-DJC, 2014 U.S. Dist. LEXIS 129259 at *22-24 (D. Mass. Sept. 12, 2014) (rejecting argument that reliance is subject to Rule 9(b)'s heightened pleading requirements).

### 3. The standard is "actual reliance," not "reasonable reliance" or "justifiable reliance."

According to the U.S. Chamber of Commerce's amicus brief, "actual reliance" is the same as "reasonable reliance," although the case law and the legal basis for the "actual reliance" requirement in misrepresentation-based UCL and FAL claims would indicate otherwise.

First, actual reliance is distinct from reasonable reliance. "Actual reliance occurs when a misrepresentation is an immediate cause of [a plaintiff's] conduct, which alters his legal relations, and when, absent such representation, he would not, in all reasonable probability, have entered into the contract or other transaction." *Conroy v. Regents of Univ. of* Calif., 45 Cal. 4th 1244, 1256 (2009) (internal quotations omitted). Whereas actual reliance requires "a complete causal

relationship between the alleged misrepresentations and the harm to have resulted therefrom," reasonable reliance requires that "circumstances were such to make it reasonable for the plaintiff to accept the defendant's statements without an independent inquiry or investigation." *See OCM Principal Opportunities Fund v. CIBC World Markets Corp*., 157 Cal. App. 4th 835, 864 (2007). And to the extent courts have said Proposition 64 imposes a reliance requirement, it is explicitly an "actual reliance" requirement, with no requirement that the reliance be reasonable or justified.

Proposition 64 "eliminated private attorney general standing for UCL claims." *Lozano v. AT&T Wireless Servs*., 504 F.3d 718, 731 (9th Cir. 2007). Prior to its passage, a plaintiff who had never had any dealings with the defendant could bring a claim under the UCL and FAL. Proposition 64 "restricts standing for individuals alleging UCL and FAL claims to persons who 'ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition.'" *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1103 (9th Cir. 2013) (quoting Cal. Bus. & Prof. Code §§ 17204, 17535). "[T]he purpose of Proposition 64 was to 'curtail the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealings with the defendant.'" *Id*. at 1104 (quoting *Clayworth v. Pfizer, Inc*., 49 Cal. 4th 758, 788 (2010)).

The Supreme Court of California has ruled that the "as a result of" language "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011) (stating that "as a result of" causation for a misrepresentation claim entails a showing of "actual reliance"). There is nothing about "as a result of" that requires or even suggests a further requirement that the reliance be reasonable or justified, and if the court had intended a "reasonable reliance" requirement, it would have said so. A plaintiff does not have to allege reasonable reliance to satisfy this pleading requirement; rather, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation." *Hinojos*, 718 F.3d 1104 (quoting *Kwikset*, 51 Cal. 4th at 330). "Pleading that one would not have otherwise purchased the product but for the misleading advertising… satisfies the consumer's obligation to plead a causal link between the advertising and the alleged economic injury." *Id. at* 1104 n.5; *see also Kwikset*, 51 Cal. 4th at 327-28 (allegations that said nothing about the reasonableness of reliance "[o]n their face" satisfied "all parts" of the §17204 standing requirement).

9

**B.    Chobani's complaints about the FDA's guidance documents are neither correct nor relevant to this appeal.**

Chobani asserts that the FDA's statements have no bearing on actual reliance, and that guidance documents and warning letters don't mean anything anyway because they're not a final agency action. Plaintiffs agree that the FDA's guidance documents, warning letters, and so forth, do not bear on whether Plaintiffs adequately alleged their claim (and Plaintiffs never suggested that they did), but Chobani's assertion that they are not relevant to the legality of Chobani's labels is wrong, and the district court agreed with the Plaintiffs on this issue. In its initial order on Chobani's motion to dismiss the SAC, the district court recognized that the ECJ guidance and warning letters were entitled to judicial deference. ER73-74. Likewise, in considering Plaintiffs' motion for a preliminary injunction, the court acknowledged that it was generally bound to consider the FDA's informal interpretations of its regulations as controlling, and found that the FDA's pronouncements supported the conclusion that Chobani violated the "common or usual name" requirement. ER336-337.

This Court Circuit has stated: "[w]e give wide deference to an agency's reasonable interpretation of its own regulation." *Public Lands for the People, Inc. v. United States Dep't of Agric.*, 697 F.3d 1192, 1199 (9th Cir. 2012). "[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under Auer unless 'plainly

erroneous or inconsistent with the regulation.'" *Id.* (quoting *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Even non-final pronouncements lacking the force of law are still entitled to deference as authoritative agency interpretations. *Vanscoter v. Sullivan*, 920 F.2d 1441, 1449 (9th Cir. 1990). Compliance Guidance and other agency pronouncements can, "as a practical matter, have binding effect." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (2000) (non-binding EPA guidance documents were final agency action where an agency treated the documents as controlling in the field, and based enforcement on them).

## III. "UNLAWFUL SALE" CLAIMS

In addition to asserting claims under all prongs of the UCL based on Chobani's use of the term ECJ to describe what is really added sugar, Plaintiffs asserted a UCL "unlawful" claim based on the sale of a product that cannot legally be bought or sold.[4] Under the Sherman Law, is unlawful for any person "to

---

[4] Plaintiffs were unaware that the misbranded food products they purchased were misbranded and thus illegal to sell or possess, and lacked the factual information to recognize that the sale of misbranded food products in California or any other state constituted an illegal act. Plaintiffs were thus not *in pari delicto* with Chobani, who had superior knowledge of facts of which the Plaintiffs were unaware. Plaintiffs were justifiably ignorant of facts of which Chobani was not ignorant, Plaintiffs were not acquainted with the statutory regulations relating to Chobani's particular business and Plaintiffs were justified in presuming special knowledge by Chobani of such regulations.

As recognized by the California Courts:

manufacture, sell, deliver, hold, or offer for sale any food that is misbranded," and "to *receive in commerce* any food that is misbranded or to deliver or proffer for delivery any such food." CAL. HEALTH & SAF. CODE §§ 110760, 110770 (emphasis added). *Any* Sherman Law violation is punishable up to a year in jail or a fine of up to $1000, or both. CAL. HEALTH & SAF. Code § 111825. As set out in the Brief of Appellants and the TAC, Plaintiffs pleaded that they would not have purchased Chobani's products had they known of this illegality. *See* ER182-183, 215-216, 220.

While *one* theory advanced by Plaintiffs is that Chobani's labels were unlawful because they misleading and deceived consumers, that is not the basis of the "unlawful sale" theory. The unlawful sale theory is not based on particular label statements, but rather offering for sale products that cannot legally be bought

---

"Where the illegality of a bargain is due to

"(a) facts of which one party is justifiably ignorant and the other party is not, or

"(b) statutory or executive regulations of a minor character relating to a particular business which are unknown to one party, who is justified in assuming special knowledge by the other party of the requirements of the law, the illegality does not preclude recovery by the ignorant party of compensation for any performance rendered while he is still justifiably ignorant, or for losses incurred or gains prevented by nonperformance of the bargain."

*Owens v. Haslett*, 98 Cal. App. 2d 829, 834 (1950) (quoting RESTATEMENT OF THE LAW OF CONTRACTS § 599).

or sold. The Supreme Court of California has not addressed the viability of this theory,[5] although it finds support in cases like *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 157 (2010), and *Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 12 (2012).

While Chobani may attempt to distinguish the cases relied upon by the Plaintiffs,[6] Neither Chobani nor its amici, nor any of the cases relied upon by

---

[5] Plaintiffs would note in particular that the Supreme Court of California did not address an "illegal sale" theory in footnote 9 of *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). In *Kwikset*, the court said that to prove "as a result of" causation in a fraud based claim, the plaintiff has to show "actual reliance on the allegedly deceptive or misleading statements." *Kwikset*, 51 Cal. 4th at 326. The court also noted that the plaintiff had to show reliance in an unlawful claim because the predicate unlawfulness was based on statutes that "simply codify prohibitions against certain specific types of misrepresentations." *Id*. at *326 n.9. The statutes at issue were CAL. BUS. & PROF. CODE § 17500 ("False or misleading statements generally"), CAL. BUS. & PROF. CODE § 17533.7 (prohibiting "made in U.S.A." representations on products made outside of the U.S.A.), and CAL. CIV. CODE § 1770(a)(4) ("Using deceptive representations or designations of geographic origin in connection with goods or services."), which are all expressly based on making false or misleading statements. Here, the predicate unlawfulness is selling a misbranded product that cannot legally be bought or sold, and Plaintiffs submit that their "unlawful sale" theory is not among the types where reliance on any particular label misrepresentation has any application. *See In re Tobacco II Cases*, 46 Cal. 4th at 326 n.17 ("We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. The UCL defines 'unfair competition' as 'includ[ing] any unlawful, unfair or fraudulent business act or practice....' (§ 17200.) There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application.")

[6] To the "worthless as a matter of law" cases discussed on pages 49 and 50 of the Brief of Appellants that Chobani dismisses as "sentencing-guidelines

Chobani present any cogent reason why Proposition 64 would not allow a UCL claim based on an "unlawful product" theory as set out in the TAC, or why allegations that the Plaintiffs would not have purchased the products had they known of the illegality does not satisfy the "as a result of" causation standard imposed by Proposition 64.

Proposition 64 restricted private standing under the UCL "to any person who has suffered injury in fact and has lost money or property as a result of unfair competition." *Clayworth v. Pfizer, Inc*., 49 Cal. 4th at 788 (internal quotation marks omitted). The California Supreme Court has explained the intent of Proposition 64's "change was to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." *Id.* (internal quotation marks omitted). The intent of this change was "to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other

cases"), add *United States v. Ihenacho*, 716 F.3d 266, 277-79 (1st Cir. 2013) (where defendants dispensed and shipped drugs to customers pursuant to invalid online prescriptions for Internet pharmacy operations, loss was properly calculated based on the funds paid to the defendants), which cannot be dismissed on the theory that the plaintiffs were "robbed of the benefit of their bargain." *See* Brief of Appellee at 50.

business dealing with the defendant." *Id.* (internal quotation marks omitted). However, despite Proposition 64's stricter standing requirements, the Supreme Court has been careful to note the initiative "plainly preserved standing for those who *had* had business dealings with a defendant and had lost money or property *as a result of the defendant's unfair business practices*." *Id.* (emphasis added); *accord*, *Hinojos*, 718 F.3d at 1103-04; *Kwikset*, 51 Cal. 4th at 321.

Here, the allegations in the TAC plainly show that Plaintiffs had business dealings with Chobani in that they actually purchased Chobani's products. The allegations in the TAC also plainly show that Plaintiffs lost money as a result of Chobani's unfair business practices in that they purchased a product that they would not have purchased had they known of the illegality. To the extent Plaintiffs' unlawful sale claim is properly viewed as being based on a misrepresentation, the only applicable misrepresentation would be the implicit representation in offering the products for sale that they can be legally bought and sold. Any reliance requirement implied by the misrepresentation would be reliance on the implicit representation that the product was legally marketable.

Chobani asserts that Plaintiffs have suffered no damages because they supposedly got what they paid for. However, this Court has ruled that such a "'benefit of the bargain' defense is permissible only if the misrepresentation that the consumer alleges was not 'material,'" and "the legislature's decision to prohibit

a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos*, 718 F.3d 1107. Unless the Court could say, as a matter of law, that whether the product can legally be bought or sold would be immaterial to a reasonable consumer, Chobani's argument must fail.

Chobani also asserts that food labeling laws do not apply to consumers, so the products are not "worthless as a matter of law," and so presumably Plaintiffs got their money's worth, regardless of whether the sale was legal on Chobani's end. What Chobani fails to cite is any authority that actually holds that the Sherman Law does not apply to consumers. Chobani argues that the prohibition on "holding" misbranded products should be construed as holding for sale, but the language of the Sherman Law also says that it is illegal to "receive in commerce" a misbranded product, and Chobani offers no explanation of how a consumer who purchases a product does not receive it in commerce.

Furthermore, even if one were to assume, for the sake of argument, that there were controlling legal authority holding that the Sherman Law's prohibitions on "holding" or "receiving in commerce" misbranded foods were not applicable to consumers,[7] a reasonable consumer still might prefer not to participate in an illegal

---

[7] In evaluating Chobani's assertion that a consumer who "holds" or "receives in commerce" a misbranded product should not be concerned about

16

transaction, even if the penalties for a violation apply only on the seller's side. Even if Chobani were correct that the Sherman Law does not apply to consumers, it would still not follow that consumers do not care whether the products they buy can be legally sold.

Chobani also asserts that a plaintiff who knows that a product is misbranded and buys it anyway cannot claim to have been deprived of money as a result of the misbranding. Plaintiffs do not disagree. However, that is not a part of Plaintiffs "unlawful sale" claim. The suggestion that the illegal sale theory advanced by Plaintiffs would somehow circumvent Proposition 64 and manufacture standing by buying a product knowing of its illegality is unfounded because a plaintiff does not have standing to pursue a UCL claim if he knew of the illegality at the time of the purchase. *Buckland v. Threshold Enterprises, Ltd*., 155 Cal. App. 4th 798, 813, 815-17 (2007), disapproved in part on other grounds, *Kwikset*, 51 Cal. 4th at 337. Since Plaintiffs alleged that they would not have purchased the products had they

_____

violating the Sherman Law, the Court should consider whether a person arrested for such a violation could sue the law enforcement officer who arrested the person and overcome a qualified immunity defense. In other words, could that person show that the arrest amounted to a violation of "clearly established" statutory or constitutional rights of which a reasonable person would have known? If the plain language says that a person who "receives in commerce" a misbranded product commits an offense, and neither the statute nor any controlling authority holds that it does not apply to consumers, would an officer who arrests such a consumer violate clearly established rights? Unless the Court could say with confidence that an officer making such an arrest could be successfully sued for violating the person's rights, Plaintiffs suggest that Chobani's arguments that the law should not be construed as applying to consumers is beside the point.

known of the illegality, Chobani's argument they would not have standing if they had known of the misbranding is irrelevant to this appeal.

## IV. NATURAL CLAIMS

As alleged in the TAC, Chobani's practice of labeling its products as "natural" when they contain 1) artificial colors as defined by California and federal law, and 2) highly processed artificial coloring ingredients is unlawful and misleading. *See* ER205-214. The fact that Chobani uses color additives at all precludes labeling the products from being labeled as "natural" according to the state of California and the FDA, and thus renders the products misbranded and subject to the same "unlawful sale" theory discussed above. *See* ER208, *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food*, 58 FED. REG. 2302, 2407 (January 6, 1993). In arguing that Plaintiffs do not cite any regulation in support of their natural claims, Chobani completely ignores the fact that plaintiff relies on 21 C.F.R. §§ 70.3 and 101.22, which make clear that the ingredients Chobani used to color its products were "artificial colors." 21 C.F.R. § 101.22(a)(4) states "The term artificial color or artificial coloring means any "color additive" as defined in § 70.3(f) of this chapter." 21 C.F.R. § 70.3(f) states "where a food substance such as beet juice is deliberately used as a color, as in pink lemonade, it is a color additive." Thus, by

claiming on its product packaging that its products contained all natural ingredients when in fact they contained ingredients classified as artificial by California and the federal government, Chobani utilized labeling that was false and misleading and thus its products were misbranded. CAL. HEALTH & SAF. CODE §§ 110660, 110760. In finding it implausible that the Plaintiffs were misled by such false and misleading labeling and the representation of per se "artificial colors" as natural ingredients, the District Court committed reversible error. *See Rev Op Group*, 771 F.3d at 630-32.

The products are also unlawfully and misleadingly labeled because they are labeled as "natural" when in fact they contain coloring ingredients that are "highly processed unnatural substances far removed from the fruits or vegetables they were supposedly derived from and in fact were more akin to synthetic dyes like coal tar dyes. Representing such dyes as natural is false and misleading." ER210. According to Chobani, its amici, and the district court, this does not sufficiently place Chobani on notice of the claims against it, because Plaintiffs did not detail the manufacturing process in the TAC. However, even where Rule 9(b)'s heightened pleading requirements apply, the requirement is to include an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted). "To comply with Rule 9(b),

allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation, quotations omitted). The information provided in the TAC is more than sufficient to tell Chobani what it is alleged to have done wrong, and requiring Plaintiffs to plead the details of the manufacturing process, which is already known to Chobani but not generally available to the public, does nothing to further the purpose of Rule 9(b).

It is no secret in the food industry that natural-sounding coloring ingredients like those used in Chobani's products, though they may be derived from natural sources via solvent extraction and chemical refinement (often with synthetic stabilizers and preservatives), are not the innocuous "squeezings" of everyday fruits and vegetables that they appear to be on food labels. If Chobani's coloring ingredients really were nothing more than boiled down fruit or vegetable squeezings as the labels suggest, Chobani could very easily say so in its answer and prove it on summary judgment. Requiring Plaintiffs to plead the details of the manufacturing process has nothing to do with providing Chobani the information necessary to defend against the charge that the ingredients are not "natural," and it does not serve the purpose of Rule 8(a) or Rule 9(b) to require Plaintiffs to plead in

any greater detail than they already have. Moreover, Plaintiffs cannot reasonably be expected to plead with greater particularity the particular processes that Chobani's ingredients go through, especially when the ingredients themselves are only disclosed in general terms like "fruit or vegetable juice (for color)" on the labels. *See* ER202.

## V.     UNJUST ENRICHMENT

As discussed in Plaintiffs' principal brief, the district court dismissed Plaintiffs' unjust enrichment claims with prejudice on the theory that the cause of action does not exist under California law. Plaintiffs pointed out that the district court's ruling was untenable in light of recent decisions, including this Court's rulings in *Ohno v. Yasuma*, 723 F.3d 984 (9th Cir. 2013), and *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014) . In response, Chobani asserted that unjust enrichment is not a cause of action, and attempted to distinguish *Ohno* in a footnote (on the dubious assertion that an "action for relief" does not imply a cause of action), but ignores *Berger* completely. That, no doubt, is because *Berger* lays out the elements of the cause of action and Chobani has no response.

But that is not all. After Plaintiffs filed their principal brief in this case, the Sixth Appellate District of the California Court of appeal issued its opinion in *Meister v. Mensinger*, 230 Cal. App. 4th 381 (2014). In *Meister*, the court confirmed that the remedy for unjust enrichment can be non-restitutionary

"disgorgement" of a defendant's profits. *Id*. at 398. Such non-restitutionary damages are not available under the UCL, FAL, or CLRA. *See Henderson v. Gruma Corp*., No. CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077 at *22-24 (C.D. Cal. Apr. 11, 2011).

"Disgorgement as a remedy is broader than restitution or restoration of what the plaintiff lost." *Meister*, 230 Cal. App. 4th at 398. "There are two types of disgorgement: restitutionary disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment." *Id*. There are "'[m]any instances of liability based on unjust enrichment ... [that] do not involve the restoration of anything the claimant previously possessed ... includ[ing] cases involving the disgorgement of profits ... wrongfully obtained.'" *Id* (quoting *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542 (2007)).

Unlike California's consumer protection statutes, under an unjust enrichment theory:

> The emphasis is on the wrongdoer's enrichment, not the victim's loss. In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again. Disgorgement may include a restitutionary element, but it "'may compel a defendant to surrender all money obtained through an unfair business practice ... regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice.'" Without this

result, there would be an insufficient deterrent to improper conduct that is more profitable than lawful conduct."

*Meister*, 230 Cal. App. 4th at 398-99 (internal citations omitted).

In the context of the present case, under Plaintiffs' statutory claims, they would be limited to restitutionary damages. They would have to prove their actual losses—the difference in value between what they paid and what they received. Such a calculation may or may not require complex mathematical analysis and expert testimony.[8] On the other hand, the required proof and calculation for an award of non-restitutionary disgorgement would be very different. That analysis would turn on Chobani's profits from the illegal products at issue. That analysis would also require different types of evidence.

Moreover, the evidentiary burdens of the parties would be different when proving non-restitutionary disgorgement damages. "In measuring the amount of the defendant's unjust enrichment, the plaintiff may present evidence of the total or gross amount of the benefit, or a reasonable approximation thereof, and then the defendant may present evidence of costs, expenses, and other deductions to show

---

[8] To be clear, it remains Plaintiffs' position that, because the products at issue were illegal to manufacture, sell, or resell, as a matter of law, these products were worth zero, and the damage to Plaintiffs and the class are the actual out-of-pocket costs for the purchase of the products. *See, e.g., U.S. v. Gonzalez-Alvarez*, 277 F.3d 73, 78 (1st Cir. 2002) (food products that violate 21 U.S.C. § 331 are worth zero). Chobani is likely to take a different position that would require a different and more complex mathematical calculation to determine restitutionary damages.

the actual or net benefit the defendant received." *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1487 (2014). "'The party seeking disgorgement "has the burden of producing evidence permitting at least a reasonable approximation of the amount of the wrongful gain," and the "[r]esidual risk of uncertainty in calculating net profit is assigned to the wrongdoer."'" *Id* (quoting *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 894 (2010)).

Additionally, unlike Plaintiffs' claims under the UCL, FAL, and CLRA, a claim for unjust enrichment would not be subject to the requirements of Rule 9(b).[9] *See Waldrup v. Countrywide Fin. Corp.*, No. 2:13-cv-08833-CAS(CWx), 2014 U.S. Dist. LEXIS 52216 at *22 (C.D. Cal. Apr. 14, 2014) ("Unlike plaintiff's claims for fraud and for violations of RICO, plaintiff's claim for unjust enrichment turns solely on her allegation that she paid fees for a worthless appraisal. To prevail on this claim, plaintiff need not show that plaintiff made any particular representations upon which she relied in purchasing the appraisal. Accordingly, Rule 9(b) does not apply, and the claim may be pled generally under the normal Rule 8 pleading standard."). And finally, unlike under the UCL where restitution is determined by the Court, the amount of restitution for unjust enrichment is determined by the jury. *See American Master Lease* , 225 Cal. App. 4th at 1483-

---

[9] It remains Plaintiffs' position that their claims under the "unlawful" prong of the UCL are not subject to the requirements of Rule 9(b).

84; *Meister*, at 396-397, 399-401. Based on the foregoing, if Plaintiffs are precluded from asserting a claim for unjust enrichment, they will be denied the opportunity to pursue potentially greater damages that would be subject to a lesser evidentiary burden.

In addition, while Plaintiffs submit that Proposition 64 does not preclude their illegal sale theory where they were unwittingly sold an illegal product in an unlawful transaction prohibited by law, and whereby the Defendant received money obtained from the Plaintiffs in an illegal transaction, Proposition 64 does not apply to their common law unjust enrichment claim, where the defendant was unjustly enriched at the Plaintiffs' expense in an illegal transaction.

Even Judge Koh, the very same district judge whose order is now under review, recently acknowledged that cases like *Berger* and *Meister* have changed the judicial landscape:

> To be sure, it appears that California law now permits unjust enrichment to serve as an independent cause of action, *see Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014), and restitution does not necessarily equal unjust enrichment, *see Meister v. Mensinger*, 230 Cal. App. 4th 381, 398, 178 Cal. Rptr. 3d 604 (2014).

*Brazil v. Dole Packaged Foods, LLC*, No.: 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 169948 (N.D. Cal. Dec. 8, 2014). The district court erred in holding that California law does not recognize unjust enrichment as a stand-alone cause of action, and the error caused legal prejudice to the Plaintiffs.

## CONCLUSION AND PRAYER

For the foregoing reasons, the district court's orders dismissing the SAC and the TAC should be reversed and the case remanded to the district court for further proceedings.

Respectfully submitted,

__/s/ Darren L. Brown_____
Darren L. Brown
Texas Bar No. 03108350
PROVOST★UMPHREY
LAW FIRM, L.L.P.
490 Park Street
P.O. Box 4905
Beaumont, TX 77704
Telephone: (409) 835-6000
Facsimile: (409) 838-8888
dbrown@pulf.com

Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda
Suite 425
San Jose, CA 95126
Main: (408) 369-0800
Direct: (408) 429-6506
pgore@prattattorneys.com

Attorneys for Plaintiffs/Appellants,
Katie Kane, Darla Booth, and Arianna
Rosales

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 6609 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Time New Roman type.

*/s/ Darren L. Brown*

Darren L. Brown
Attorney for Plaintiffs/Appellants,
Katie Kane, Darla Booth, and Arianna
Rosales

Dated: January 20, 2015

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 20, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s/ Darren L. Brown*_____
Darren L. Brown